SCHOOL DIST. OF WARMINSTER TP. v. RECONSTRUCTION FINANCE CORPORATION.

Civ. No. 6394.

District Court, E. D. Pennsylvania.

June 2, 1947.

Arthur M. Eastburn, of Doylestown, Pa., and W. Richardson Blair and Ballard, Spahr, Andrews & Ingersoll all of Philadelphia, Pa., for plaintiff.

150

Edwin J. Feeny, of Philadelphia, Pa., for Reconstruction Finance Corporation, defendant.

McGRANERY, District Judge.

Plaintiff, a fourth class school district of Bucks County, Pennsylvania, brought suit on July 30, 1946, against the Reconstruction Finance Corporation for $584.20, an amount allegedly due for late payment of taxes. The taxes had originally been assessed against the Defense Plant Corporation for the school tax year 1944 on real estate it owned in the district and amounted to $11,683.80. Later in 1944, Defense Plant Corporation conveyed the real estate upon which the taxes had been levied to the United States Navy, a tax-exempt instrumentality of the United States. The taxes were due on or before September 1, 1944, but the Defense Plant Corporation declined to pay, as did the Navy, which by that time had title to the property. Finally, on March 3, 1945, the Navy paid one half of the amount of the 1944 school tax and on March 21, 1945, Defense Plant Corporation paid the remaining one half. Plaintiff contends that Defense Plant Corporation, by reason of the late payment, became subject to an additional tax of $584.20, representing five percent of the principal amount of the tax originally due, under a Pennsylvania statute of 1911. 24 P.S. § 608. On July 1, 1945, Defense Plant Corporation was dissolved by joint resolution of Congress, 59 Stat. 310, 15 U.S.C.A. § 606b note, and all of its functions, powers, duties and liabilities were transferred to the Reconstruction Finance Corporation. Therefore, this suit is against Reconstruction Finance Corporation.

Plaintiff originally started suit in the Court of Common Pleas of Bucks County, but defendant obtained removal to this court. Plaintiff filed a motion to remand, and following argument, Judge Welsh of this court overruled the motion. Meanwhile, defendant had filed a motion to dismiss the complaint on the ground that it failed to assert a claim on which relief could be granted. Defendant did not claim timely payment but argued alternatively that the United States had not consented to the levying of local tax penalties upon the Reconstruction Finance Corporation, and that, in any event, the applicable statute had been repealed. By stipulation, the parties agreed that defendant's motion to dismiss be considered its answer, and plaintiff would file a motion for judgment on the pleadings to enable the court to make a final decision. It is upon that motion that the case is now before the court.

Defendant contends that the waiver of its immunity to local taxation contained in section 10 of the Reconstruction Finance Corporation Act, 15 U.S.C.A. § 610, does not extend to penalties for late payment and that, therefore, this suit must fail. Missouri Pacific R. Co. v. Ault, 1921, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087. That section provides, inter alia, that " * * * any real property of the corporation shall be subject to State, Territorial, County, municipal, or local taxation to the same extent according to its value as other real property is taxed. * * * " The court feels that, whatever the merits of defendant's contention that waivers of governmental immunity should be strictly construed, the exact question in this case has been foreclosed by the language of the Supreme Court in Reconstruction Finance Corporation v. County of Beaver, 328 U.S. 204, 66 S.Ct. 992, 995, 90 L.Ed. 1172. Reconstruction Finance Corporation there contested the right of a Pennsylvania taxing authority to include certain machinery as real property to be assessed and levied upon. In rejecting defendant's contention that state definitions of real property should not control, the court said: "We think the Congressional purpose can best be accomplished by application of settled state rules as to what constitutes 'real property' so long as it is plain, as it is here, that the state rules do not effect a discrimination against the government, or patently run counter to the terms of the Act. Concepts of real property are deeply rooted in state traditions, customs, habits, and laws. Local tax administration is geared to those concepts. *To permit the states to tax, and yet to require them to alter their long-standing practice of assessments and collections, would create the kind of confusion and resultant hampering of local tax machinery, which we are certain Congress did not in-*

*tend.* The fact that Congress subjected Defense Plant Corporation's properties to local taxes 'to the same extent according to its value as other real property is taxed' indicated an intent to integrate Congressional permission to tax with established local tax assessment and collection machinery." (Emphasis supplied.)

The applicability of nondiscriminatory local "practice of assessments and collections" to the Reconstruction Finance Corporation is the specific issue before this court and the Beaver case indicates that Congress has consented to its use in the waiver of the agency's immunity contained in section 10 of the Reconstruction Finance Corporation Act. That the Pennsylvania Supreme Court interprets the waiver similarly is apparent in Borough of Homestead v. Defense Plant Corporation and Reconstruction Finance Corporation, 1947, 356 Pa. 500, 52 A.2d 581.

The Reconstruction Finance Corporation further contends that if it is not held immune, nevertheless, under Pennsylvania law it is not liable for the tax because the statute authorizing its imposition was repealed in 1945. 72 P.S. § 5511.1 et seq. The 1911 Act, 24 P.S. § 608, by the authority of which the plaintiff imposed the 5% additional tax provided: "On all school taxes assessed and levied in all districts of the second class a rebate of one per centum shall be allowed if paid before the first day of August in the year in which they are assessed and levied. To all such taxes in school districts of the second class which are not paid before the first day of October of the year in which they are assessed and levied there shall be added a penalty of five per centum, and on the first day of January of the year following and on the first day of each month thereafter succeeding during which the said taxes remain unpaid, an additional penalty of one-half of one per centum shall be added, which penalty shall be collected at the same time and in addition to the school taxes of which it is made a part. To all school taxes assessed and levied in all school districts of the third and fourth class in this Commonwealth, which are not paid on or before the first day of October in the year in which they are assessed and levied, there shall be added a penalty of five per centum, which shall be collected at the same time as and in addition to the school taxes of which it is made a part."

The 1945 statute specifically repealed the 1911 Act but section 3(b) of the 1945 statute, 72 P.S. § 5511.3(b), states that its provisions " * * * shall apply to all *taxes* covered by the provisions of this act heretofore levied and remaining uncollected." (Emphasis supplied.) Section 10 of the 1945 statute, 72 P.S. § 5511.10, sets up a scheme for collecting tardy taxes similar to that contained in the applicable section of the 1911 Act. However, defendant claims that the 5% exaction is not a tax, but a penalty, and that under Pennsylvania law, penalties must be specifically saved to survive repeal of the statute imposing them. Commonwealth v. Standard Oil Co., 101 Pa. 119; Hamilton v. Lawrence, 110 Pa.Super. 344, 167 A. 509. Plaintiff argues that the 5% exaction, once levied, is part of the tax, and is, therefore, outside of the repealer doctrine.

It is clear that state law should control on the subject, not because of the *Erie* doctrine, because that would be inapplicable, but by force of the *Beaver* decision, and the policy behind it. If state law controlled there on the definition of real property, then it should control here, as well, on the issue of whether a nondiscriminatory real property tax survives repeal of the statute imposing it. Under local law, it is apparent that there are additional exactions that resemble penalties, in the popular sense of that word, that are not treated as such. Thus, in *Hamilton* v. *Lawrence,* supra [110 Pa. Super. 344, 167, A. 510], the case chiefly relied upon by Reconstruction Finance Corporation, the court held that a tax lien included a 5% additional tax levied for tardy payment of taxes. The applicable statute read, " * * * all persons, who shall fail to make payment of any taxes charged against them * * * for six months after notice given * * * shall be charged five per cent additional on the taxes charged against them, which shall be added thereto * * * and collected." P.L. June 25, 1885, p. 187, § 7. As to that sum, the court said: "While it partakes of the nature of a penalty for delay in the

payment of taxes, strictly speaking, it is declared to be an additional sum to be added by the collector to the taxes charged in the duplicate, and collected by him. It becomes a part of the tax, with the same effect as if it had been originally charged in the duplicate, and carries the same incidents."

In Appeal of the City of Titusville, 108 Pa. 600, in construing a similar statute and holding that the additional exaction was entitled to the same prior lien on funds of the taxpayer as the original tax, the court said: "The increase of the tax thus authorized by the terms of the supplement, is in the nature of interest or damages rather than a penalty, in the strict sense of that word; but, whether it be regarded as damages, for deferred payment, or a penalty, it is very clear that each additional sum of five per cent becomes a part of the tax which the delinquent taxpayer is required to pay. * * *"

However, in Hamilton v. Lawrence, supra [110 Pa.Super. 344, 167 A. 511], a one per cent a month levy on unpaid taxes beginning the first of January of the year following the levy was characterized as a penalty, which could be saved only by an explicit reservation in a repealer act. As to this exaction, the court said: "It is a true penalty, imposed *eo nomine,* beginning the 1st of January of the year following the levy. * * * The penalty imposed by the act of 1929, *eo nomine,* would therefore fall with its repeal * * * unless saved by a clear, unambiguous provision of the repealing act. * * *"

■ Since the 5% exaction in dispute here is referred to in the Act imposing it and in the 1945 Act as a "penalty", Reconstruction Finance Corporation claims that under the reasoning of the *Hamilton* case, it must be construed as such. However, the court feels that the Pennsylvania cases indicate that not the name, but the type, of tax is the proper criterion to be imposed in judging an exaction as a "tax" or a "penalty." Thus, in the *Hamilton* case itself, the court, in discussing Harrisburg v. Guiles, 192 Pa. 191, 44 A. 48, one of the cases relied upon by it in its decision, said: "It is true that Judge McPherson used the colloquial term 'penalty,' but the important part of his decision was that the additional

5 per cent. *becomes part of the tax."* Cf. also Pennsylvania Co. v. Zussman, 122 Pa. Super. 325, 186 A. 378.

■ Moreover, in the *Hamilton* case, the court clearly distinguished between two types of additional exactions. One of them, a 5% exaction coming six months after notice, was characterized as a "part of the tax" and carrying "the same incidents." The other, a repetitive automatic one per cent a month exaction on unpaid taxes beginning the first of January of the year following the levy, was characterized as a penalty. The Act of 1911, imposing the tax in dispute here, contains these two types of additional exactions, see supra. The court feels that the 5% exaction in this case, which is of the former sort and comes, not six, but only two or three months after notice, is, under Pennsylvania law, a "part of the tax," saved by a general clause saving "taxes" heretofore levied but uncollected. This conclusion is reinforced by Pennsylvania Co. v. Zussman, supra, where it was held that an act providing for the abatement of interest and penalties imposed on delinquent taxes did not apply to additions, even though also called penalties, which were imposed by law on current taxes before they became delinquent; i.e., under the applicable statutes, before January 15th following the year of the levy.

The very recent case of Borough of Homestead v. Defense Plant Corporation and Reconstruction Finance Corporation, supra [356 Pa. 500, 52 A.2d 587.], indicates that even a moderate, automatic, repetitive exaction might not be within the repealer doctrine, although the case is not explicit on the point. It was there held that the Defense Plant Corporation was subject to a lien for a local real estate tax and that the tax lien included interest of one half of one percent a month for delinquency in payment, as provided for by statute. 53 P.S. § 13398. Although the additional exaction in the Hamilton case, supra, which was held to bear interest and become part of a tax lien was the straight 5% variety, the court relied upon that case in ruling that: "The interest for delay in payment of the tax and the attorney's commission for collection are statutorily prescribed incidents in all cases of overdue taxes.

when duly imposable, such charges, along with the tax originally assessed, constitute the tax then due. * * *"

The question of repealer was not discussed although, by the force of the same 1945 statute involved in the instant case, the statute imposing the additional exaction expired while the case was in the courts, with section 10 of the 1945 Act, imposing a flat 5% exaction for delay, taking its place. From this and earlier cases, this court concludes that the additional exaction imposed upon defendant in the instant case is not a "penalty" but a "tax" which needs no explicit reservation in a repealer act.

Plaintiff School District maintains that if the 1945 Act is construed to repeal taxes already levied and assessed, it would be unconstitutional under Article 3, Section 3 of the Pennsylvania Constitution, P.S., which provides that "no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." The disposition of the main issue makes it unnecessary to deal with this argument. Plaintiff's motion for judgment on the pleadings granted.