## Appeal of the City of Titusville.

1. Under the provisions of the Act of March 18th, 1875 (P. L. 15), not only the amount of the taxes levied upon real estate but also the additional sums added thereto for failure to pay said taxes promptly are entitled to priority of payment in a distribution of the proceeds of said real estate at a judicial sale under a mortgage.

2. The Act of March 18th, 1875, after providing that taxes assessed and levied upon real estate shall be a lien on such real estate from the time of said levy, and shall have priority to any mortgage thereon, provides, in section five, that if such taxes remain unpaid after the first day of September in any year an additional sum of five per cent. shall be added thereto, and if said taxes remain unpaid after the first day of October in any year an additional sum of five per cent. shall be added thereto.

*Held,* that such additional sums added for delay in payment become part of the taxes, have the same incident of prior lien as the original taxes, and therefore, must be paid out of the proceeds of a sheriff's sale prior to the payment of the mortgage debt for which such sale was had.

February 4th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK JJ. GREEN J. absent.

APPEAL from the Court of Common Pleas of *Crawford County :* Of January Term, 1885, No. 156.

Appeal of the City of Titusville from a decree of the said court awarding to Roger Sherman, trustee, the sum of $12.26 out of the proceeds of a sheriff's sale on a mortgage under proceedings instituted by said Roger Sherman, trustee.

The facts as they appeared in a case stated for the opinion of the court, were as follows:—

The City of Titusville duly accepted the provisions of the Municipal Corporation Act of May 23d, 1874 (P. L. 230) and its supplement of March 18th, 1875 (P. L. 15), the latter of which provided that in case of failure to pay promptly municipal taxes levied on real estate additional sums should be added thereto. The language of this Act is recited in full in the opinion of this court.

On October 31st, 1883, the real estate of Patch and Almas was sold by the sheriff of Crawford County under proceedings instituted upon a mortgage made to Roger Sherman, trustee. This mortgage was recorded May 31st, 1882, thus becoming a lien on the property from that date. Before the sale, the sheriff was notifed of the non-payment of taxes of the city and school district of Titusville for the year 1883. These were levied on June 1st, of that year, amounting to $122.67, of which $74.67 were due to the city and $48 to the school dis· trict. On September 2d, an additional sum of five per cent.

was added, likewise on October 2d, making the total amount due $134.93. Payment of this having been demanded out of the proceeds of the sale, the sheriff retained in his hands an amount sufficient to cover it, together with certain labor claims, and distributed the balance. The question before the court was whether the sum of $12.26, the increase added to the taxes under the Act of March 18th, 1875 (P. L. 15), in consequence of their non-payment, was a prior lien to the plaintiff's mortgage. If such were the case it was to be paid over to the city and school district of Titusville, otherwise to the plaintiff in the mortgage proceedings.

The court, in an opinion by CHURCH P. J. decided that the percentage added to the taxes by way of penalty was not a lien on the real estate, and entered a decree that the sum in the sheriff's hands of $37.26, of which $12.26 was the increase or penalty added to the taxes, and the only amount in dispute, should be paid to the plaintiff in the execution, Roger Sherman, trustee.

The City of Titusville took this appeal (as a test case) assigning for error the said decree of the court.

*Samuel Grumbine,* for appellant. — By the construction of the Act by the court below an unequal burden is imposed on tax payers, as the penalty could be collected only where personal property might be reached, which in certain cases— that of a non-resident owner for example—would be impossible. There is nothing in the Act to indicate that payment of the additional per cent. is a penalty in the ordinary sense of the word. It declares that the owner at the time of assessment shall remain liable " for the whole amount of tax, interest, and costs including the per centum commission for delay of payment." Can this mean liable to the city for a part and to the vendee for a part? This leads to an absurdity. Statutes must be construed so as best to effectuate the intention of their makers, and where one of two interpretations leads to an absurdity, the other is to be adopted: Commonwealth *v.* Fraim, 4 Harris, 163; Big Black Creek Imp. Co. *v.* Com., 13 Norris, 450; City of Phila. *v.* Ridge Ave. Ry. Co., 6 Out., 190. Even if this per centum is imposed as a penalty it does not follow that it is not a lien. The fact that the remedy is by debt or sci. fa. implies this, as the latter writ would not be appropriate otherwise: Wilvert *et al. v.* Sunbury Bor., 32 P. F. S., 57; Pittsburg *v.* Cluley, 16 Id. 449. The inefficiency of the tax collector has nothing to do with the matter. The default of the collector neither pays the taxes nor discharges the property on which they are assessed: Germania Savings Bank's Appeal, 10 Norris, 345.

*Roger Sherman,* for appellee.—The tax is a fixed sum to be levied on June 1st, of each year, and made a lien from the date of its assessment. This additional sum is neither levied nor assessed and is certainly a penalty, depending only on the action or non-action of the taxpayer.

The only lien referred to in the Acts is of "taxes levied and assessed." This cannot be extended by implication to the amount of the penalty. The language of the statute ·must be express in order to create or extend a lien: Borough of Mauch Chunk *v.* Shortz, 11 P. F. S., 399 ; Yates *v.* Borough of Meadville, 6 Id., 21,

Mr. Justice STERRETT delivered the opinion of the court, February 16th, 1885.

It is conceded that the city and school taxes, aggregating $122.67, levied by appellant June 1st, 1883, were a preferred lien on the fund raised by the sheriff's sale in November of that year; and the single question presented by the case stated is, whether the additional sum of ten per cent. authorized by the Act hereinafter cited, is a constituent part of the tax entitled to priority of payment out of the fund. The learned president of the Common Pleas held it was not; that the ten per cent. is a penalty for non-payment at the proper time ; and, forming no part of the tax levied, was never a lien on the land sold by the sheriff. He accordingly refused to appropriate any part of the fund to the payment of the percentage above stated; and from that decree this appeal was taken.

The amount in dispute is small, only $12.26 ; but, in view of numerous cases in which the question is likely to arise, the principle is not unimportant.

In December 1877, the City of Titusville accepted and became subject to the provisions of the Municipal Corporation Act of May 23d, 1874, P. L. 230, and supplements thereto.

The 1st section of the supplement, approved March 18th, 1875, P. L. 15, provides that "all taxes assessed and levied upon real estate, . . . . . shall be a lien on such real estate from the time of such levy, and the lien hereby created shall have priority to, and shall be fully paid and satisfied before any recognizance, mortgage-debt, obligation, or responsibility, which the said real estate may become charged with or be liable to, from and after the passage of this Act."

The 5th section, after providing that the assessment of all taxes levied shall be completed on or before the first day of June in each year, and that on or before the first day of July ensuing, duplicates thereof shall be placed in the hands of the city treasurer for collection, declares that, "after the first day

of September in each and every year, the additional sum of five per centum shall be added to all the taxes remaining unpaid in said duplicates; and after the first day of October in each and every year, an additional sum of five per centum shall be added to the taxes then remaining unpaid in said duplicates; after which date the duplicates shall be placed in the hands of collectors, who shall be appointed by the city treasurer, and who shall receive for their services such compensation as shall be authorized by councils. After the first day of January, in each and every year, the city treasurer shall place correct and detailed statements of taxes remaining unpaid in the hands of the city solicitor, who shall forthwith proceed to collect the same in the manner prescribed by existing laws." The " existing laws," thus referred to, are mainly the provisions of the Act of May 23d, 1874, prescribing the mode of registration and collection of delinquent taxes.

The obvious meaning of the 5th section, above quoted, is that if the tax be not paid on or before September 1st, five per centum thereof shall be added to and become a part of the tax; and, if the tax thus increased be not paid on or before October 1st, a like amount shall be added thereto and form a part thereof, thus increasing the tax, as originally levied, one tenth. This provision was doubtless intended to secure prompt payment of taxes and at the same time save the expense of employing collectors. The same objects are sometimes accomplished by allowing a graduated abatement for prompt payment prior to certain dates, and thereafter adding a certain percentage for delinquency. The " taxes remaining unpaid," a detailed statement of which the treasurer is required to prepare and deliver to the city solicitor after the first of January, evidently means the tax originally levied, increased by the addition thereto of the ten per cent. The increase of the tax, thus authorized by the terms of the supplement, is in the nature of interest or damages rather than a penalty, in the strict sense of that word; but, whether it be regarded as damages, for deferred payment, or a penalty, it is very clear that each additional sum of five per cent. becomes a part of the tax which the delinquent taxpayer is required to pay, and to secure which the priority of lien is given.

We are therefore of opinion that, upon the case stated, the fund in question should have been awarded to appellant and the Titusville School District.

> Decree reversed at the costs of appellee; and it is now adjudged and decreed that $7.46 of the fund be paid to the City of Titusville, and the residue, $4.80, be paid to the Titusville School District.