**UNITED STATES of America**

v.

**CITY OF SPRINGFIELD.**

Civ. A. No. 59–265.

United States District Court
D. Massachusetts.

Jan. 26, 1961.

———◆———

Elliot L. Richardson, U. S. Atty., Robert L. Meade, Asst. U. S. Atty., Boston, Mass., for plaintiff.

S. Thomas Martinelli, City Sol., Springfield, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

The United States brings this action for a judgment declaring that tax liens claimed by the City of Springfield on certain real property now owned by the

United States are invalid. Both parties have moved for summary judgment.[1]

On July 6, 1949, the Reconstruction Finance Corporation (R.F.C.) loaned money to Harvey-Whipple, Inc., a Massachusetts corporation, taking back a note and mortgage on realty owned by the corporation in Springfield. On October 31, 1955, R.F.C. assigned the note and mortgage to the Secretary of the Treasury. In 1958 the Secretary instituted proceedings in this court pursuant to the power of sale contained in the mortgage, a foreclosure sale was held on March 21, 1958, the property was sold to the highest bidder, the Secretary of the Treasury, acting in behalf of the United States, for $100,000, leaving due and owing to the United States the amount of $156,-578.03 plus interest from October 24, 1958. The sale was approved by this court on June 5, 1958. The mortgage, assignment, and deed on the foreclosure sale were all duly recorded in the proper Registry of Deeds.

Real estate taxes assessed on the property to Harvey-Whipple, Inc., for the years 1949 through 1952 were paid by the corporation. Taxes similarly assessed for the years 1953 through 1958 have not been paid and the city has filed instruments of taking of the real estate pursuant to Mass. G.L. Ch. 60 §§ 37, 53, 54, 60 and 61 and claims liens on the real estate for the amount of these taxes with interest from the date of each taking.

It is conceded by the United States that if the mortgagee here had been a private individual or corporation instead of an agency of the United States, the liens claimed by the city would be valid, would have priority under Massachusetts law over the lien of the mortgagee and would not have been extinguished by the foreclosure sale. On the other hand, it contends that since the mortgagee was the R.F.C., as agency of the United States, its rights must be governed by federal law, that under federal law its

mortgage lien had priority under the principle that "the first in time is the first in right," and that this priority cannot be affected by any state law giving priority to tax liens arising subsequent to the mortgage. United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520; United States v. Ringwood Iron Mines, 3 Cir., 251 F. 2d 145.

■■ Granting that this contention correctly states the law as generally applicable, the question remains whether it is applicable in the present case in the light of 15 U.S.C.A. § 607, dealing with taxation of property of the R.F.C. which provides that "any real property of the Corporation shall be subject to special assessments for local improvements and shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed." The United States contends that this provision has no application here since the interest of R.F.C. as mortgagee was not real property. The question of whether R.F.C.'s interest constituted real property is to be determined by Massachusetts law. "We think the congressional purpose can best be accomplished by application of settled state rules as to what constitutes 'real property' so long as it is plain, as it is here, that the state rules do not effect a discrimination against the government, or patently run counter to the terms of the Act." Reconstruction Finance Corporation v. Beaver County, 328 U.S. 204, 210, 66 S.Ct. 992, 995, 90 L.Ed. 1172. The United States cites cases from which it argues that the interest of a mortgagee in real estate is not real property. Charlestown Five Cents Sav. Bank v. White, D. C., 30 F.Supp. 416; Greene v. Reconstruction Finance Corporation, D. C., 24 F.Supp. 181. Whatever the view taken of a mortgagee's interest for the purposes involved in those cases, for purposes of taxation a mortgagee of real

---

1. Defendant does not press its requests for orders for foreclosure or for payment of its tax liens but now seeks only an order adjudging its claims valid.

United States v. State of Alabama, 313 U.S. 274, 281, 61 S.Ct. 1011, 85 L.Ed. 1327.

estate in Massachusetts is regarded as a joint owner of the property, having an interest in the real estate. Mass.G.L. Ch. 59 § 14; City of Boston v. Quincy Market Cold Storage & Warehouse Co., 312 Mass. 638, 648, 649, 45 N.E.2d 959. While normally the tax is assessed against the mortgagor who is in possession, the mortgagee's interest can be assessed separately, Mass.G.L. Ch. 59 §§ 12, 13. And, of course, where the tax assessed on the property is unpaid, the city's lien for the tax takes priority over the mortgagee's interest.

■■ This Massachusetts rule is one uniformly applying to all mortgagees and hence involves no discrimination against the United States or its agencies. However, the United States contends that it should not be applied here since it runs counter to the purpose of the provision subjecting the real property of the R.F.C. to taxation. The purpose of this provision was to ease the financial burden on states and municipalities which it was feared would result if property owned by the R.F.C. should be placed outside their taxing powers by virtue of the immunity enjoyed by the United States. M'Culloch v. State of Maryland, 4 Wheat. 316, 4 L. Ed. 579. Government argues that such a provision was unnecessary here since the city could, and in fact did, during the years in question assess the taxes to the mortgagor. The mere right to assess, however, is illusory without an effective ability to collect. The purpose of the waiver of the tax immunity of the United States would be partially defeated if it did not apply where the local government had a right to make an assessment on some other taxpayer who might prove unable to pay. To afford to local governments the relief which was intended by the waiver of the government's tax immunity, it should be interpreted as subjecting the property not merely to the assessment of the tax but to those provisions governing the establishment of tax liens and their relative priority which are an integral part of the state's tax scheme and are designed to give the local taxing authority security for the ulti-

mate collection of the tax. United States v. Mays, 10 Cir., 264 F.2d 317. As the Supreme Court said in the Beaver County case, supra, 328 U.S. at page 210, 66 S.Ct. at page 995, "To permit the states to tax, and yet to require them to alter their longstanding practice of assessments and collections, would create the kind of confusion and resultant hampering of local tax machinery which we are certain Congress did not intend. The fact that Congress subjected Defense Plant Corporation's properties to local taxes 'to the same extent according to its value as other real property is taxed' indicated an intent to integrate congressional permission to tax with established local tax assessment and collection machinery." The cases cited by the United States as requiring a contrary result are readily distinguishable. In none of them was there any provision comparable to § 607 which could be interpreted as permitting the application of any state rule establishing any priority of liens.

■ There is a further question whether the lien of the city should include interest imposed under the Massachusetts statutes on unpaid taxes. Whether interest on unpaid taxes is a part of the taxes to which property of the R.F.C. was made subject by § 607 is a question to be determined by the law of the state. Thus in School Dist. of Warminster Tp. v. Reconstruction Finance Corporation, D. C., 72 F.Supp. 149, the R.F.C. was held liable for a penalty for late payment of taxes on the ground that under Pennsylvania law the charge, while called a penalty, became part of the tax. Similarly in Reconstruction Finance Corporation v. State of Texas, 5 Cir., 229 F.2d 9, it was held that the state law was determinative of the nature of the interest claim, although in that case collection was denied since under Texas law the interest did not become part of the tax.

Mass.G.L. Ch. 59 § 57 provides for interest at 4 per cent on unpaid real estate taxes, running from October 1 of the

year for which the tax is assessed. This section contains the provision that: "In all cases where interest is payable it shall be added to and become part of the tax." The lien of the city would therefore extend to interest imposed under this section. Presumably such interest was included in amount of the lien as set forth in the instrument of taking. Mass.G.L. Ch. 60 § 54.

The city also claims interest at the rate of 6½ per cent from the date of the taking under Mass.G.L. Ch. 60 § 62. This section provides for the redemption of property taken for taxes by payment of the amount of the tax title account for which the property was taken with interest on this amount at 6½ per cent from the date of the taking, together with other lawfully added charges. The city contends that this interest by virtue of Ch. 59 § 57 becomes part of the tax and should therefore be included in the amount of its lien.

This contention must be rejected. The normal interpretation of § 57 would seem to be that it is intended to include in the amount of the tax only the interest referred to in that section. There is nothing in § 57 to indicate it was intended to apply to interest imposed under other chapters. And nothing in Ch. 60 § 62 indicates any intention to make § 57 applicable to the interest for which § 62 provides. Moreover, under Ch. 60 § 52 the tax title of the city under its instrument of taking may be assigned to any person who pays to the city the amount necessary for redemption. The property may still be redeemed under § 62 until title is made absolute by foreclosure, but if it is so redeemed the assignee of the title receives the amount he paid the city and in addition the 6½ per cent interest accruing after title was assigned to him. Thus interest under § 62 is not necessarily payable in full to the city. Clearly this is not the type of interest which Massachusetts intended to make a part of the tax due to the city.

The motion of the United States for summary judgment is denied. The mo-

tion of defendant for summary judgment is allowed and judgment will be entered for defendant declaring that the tax liens of the City of Springfield on the real property involved are valid for the amount of the taxes assessed on the property for the years 1953 through 1958, including in that amount interest at 4 per cent on the amount of the original assessment from October 1 of the year of the assessment until the filing of the city's declaration of taking.